UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE NICHOLAS TSOUCALAS, SENIOR JUDGE

| | |
|---|---|
| UNITED STATES,       )<br>          )<br>     Plaintiff,     )<br>          )<br>      v.        )<br>          )<br>ADAPTIVE MICROSYSTEMS, LLC,   )<br>          )<br>AMS CHAPTER 128, LLC (formerly known  )<br>as Adaptive MicroSystems, LLC),   )<br>          )<br>     and       )<br>          )<br>AMS HOLDINGS CHAPTER 128,   )<br>INC. (formerly known as Adaptive   )<br>MicroSystems Holdings, Inc.),   )<br>          )<br>     Defendants.   )<br>          ) | Court No. 12-00122 |

## OPPOSITION TO DEFENDANT ADAPTIVE MICROSYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT

STUART F. DELERY
Principal Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

BRIAN M. HOLT
Office of Associate Chief Counsel
U.S. Customs and Border Protection
610 South Canal, Suite 767
Chicago, IL 60607

J. HUNTER BENNETT
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
(202) 616-2279

January 25, 2013

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES......................................................................ii

STATEMENT OF THE CASE..................................................................2

     I.    Nature Of The Case.................................................................2

     II.   Statement Of Facts.................................................................2

ARGUMENT.........................................................................................3

     I.    Standard of Review...............................................................3

     II.   New Adaptive Has Failed To Establish That It Is Entitled To Judgment As A Matter Of Law On The Issue Of Whether It Is Liable For The Debts Of Old Adaptive..........................................................................4

          A.  There Is A Genuine Issue Of Material Fact As To Whether This Transaction Amounted To A De Facto Merger...........................5

              Factor One: "the assets of the seller corporation are acquired with shares of stock in the buyer corporation, resulting in a continuity of shareholders"...............................................................6

              Factor Two: "the seller ceases operations and dissolves soon after the sale".................................................................7

              Factor Three: "the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets and general business operations".......................................................................7

              Factor Four: "the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations".................................................................10

          B.  There Is A Genuine Issue Of Material Fact As To Whether New Adaptive Is Merely A Continuation Of Old Adaptive..................10

CONCLUSION ....................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ..........................................4, 8

*Armour-Dial Inc. v. Alkar Engineering Corp.*,
    469 F.Supp. 1198 (E.D. Wis. 1979) ....................................................................10

*Explosives Corp. of America v. Garlam Enter. Corp.*,
    615 F. Supp. 364, 368 (D.P.R. 1985) ...................................................................11

*First Nat'l Bank of Arizona v. Cities Serv. Co.*,
    391 U.S. 254 (1968) ...........................................................................................4

*Fish v. Amsted Industries, Inc.*, 126 Wis. 2d 293 (1985) .....................................5, 6

*Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977) ..............................4, 6, 11

*Parson v. Roper Whitney, Inc.*,
    586 F.Supp. 1447 (W.D. Wis. 1984) ...................................................................10

*Schawk v. City Brewing Co., LLC*,
    2003 WL 1563767 (Wis. Ct. App. 2003) (unpublished disposition) ..............5, 6

*Sedbrook v. Zimmerman Design Group, Ltd.*,
    526 N.W.2d 758 (Wis. Ct. App. 1994) ...............................................................5, 8

*Smith v. Meadow Mills*,
    60 F. Supp. 2d 911 (E.D. Wis. 1999) .................................................................5, 6

## STATUTES

19 U.S.C. § 1592(a) ..............................................................................................2

19 U.S.C. § 1592(c) ..............................................................................................2

19 U.S.C. § 1592(d) ..............................................................................................2

Wis. Stat. § 180.1101(c) .........................................................................................6

## RULES

Fed. R. Civ. P. 56 ..............................................................................................3, 8

Fed. R. Civ. P. 56(c) …………………………………………………………………………………...4

Fed. R. Civ. P. 56(e) …………………………………………………………………………………..4

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE NICHOLAS TSOUCALAS, SENIOR JUDGE

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 12-00122 |
| | ) | |
| ADAPTIVE MICROSYSTEMS, LLC, | ) | |
| | ) | |
| AMS CHAPTER 128, LLC (formerly known | ) | |
| as Adaptive MicroSystems, LLC), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMS HOLDINGS CHAPTER 128, | ) | |
| INC. (formerly known as Adaptive | ) | |
| MicroSystems Holdings, Inc.), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPPOSITION TO DEFENDANT ADAPTIVE MICROSYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States, respectfully opposes the motion for summary judgment filed by defendant Adaptive Microsystems, LLC (New Adaptive). New Adaptive asserts that this Court should rule as a matter of law that it is not liable for the debts incurred by AMS Chapter 128, LLC (formerly known as Adaptive MicroSystems, LLC and hereinafter referred to as Old Adaptive) because New Adaptive allegedly only purchased the assets of that company and none of its liabilities. This Court should deny this motion. New Adaptive is subject to successor liability for the debts of Old Adaptive because its purchase of Old Adaptive's assets constituted a *de facto* merger of the two companies and/or New Adaptive is merely a continuation of Old Adaptive. At a

minimum, there is a genuine issue of material fact as to New Adaptive's liability for Old

Adaptive's debts, which precludes a grant of summary judgment.

## STATEMENT OF THE CASE

### I.      Nature Of The Case

Proceeding pursuant to 19 U.S.C. §§ 1592(c) and (d), the United States filed suit

on behalf of the Department of Homeland Security, U.S. Customs and Border Protection

(CBP) against New Adaptive, Old Adaptive, and AMS Holdings Chapter 128, Inc.

(formerly known as Adaptive MicroSystems Holdings, Inc. and hereinafter referred to as

Old Adaptive Holdings) to recover $595,658.71 in unpaid, lawful customs duties and

$22,413,518.97 in civil penalties for violations of 19 U.S.C. § 1592(a).

### II.     Statement Of Facts

In its complaint, filed May 3, 2012, the United States alleges that from July 2005

through April 2010, Old Adaptive misclassified under the Harmonized Tariff Schedule

various light emitting diode (LED) message displays and parts for those displays that it

imported into the United States.  See Complaint at ¶¶ 7-8.  The complaint asserts that Old

Adaptive acted with fraud, gross negligence, and/or negligence in misclassifying these

items, and that the misclassifications resulted in an underpayment of customs duties by

Old Adaptive in the amount of $595,658.71.  Complaint at ¶¶ 10-12.

On July 27, 2011, CBP issued a section 1592(d) duty demand to Adaptive in the

amount of $595,658.71 and assessed a $6,202,576.07 penalty alleging that the

misclassifications were the result of gross negligence.[1]  Exhibit A.

---

[1] CBP subsequently issued several amended penalty notices.

2

By August 2011, Old Adaptive and Old Adaptive Holdings had been placed into receivership pursuant to Chapter 128 of the Wisconsin Statutes. New Adaptive's Memorandum of Law in Support of Its Motion for Summary Judgment (Memorandum) at 2. New Adaptive was formed for the sole purpose of purchasing Old Adaptive's assets. Memorandum at 2. On August 9, 2011, New Adaptive purchased "substantially all" of the assets of Old Adaptive and Old Adaptive Holdings. Exhibit 1 to Second Affidavit of Dennis Thums. New Adaptive retained "substantially all" of Old Adaptive's employees, including Thomas J. Mandler, who was Old Adaptive's Executive Vice President and owned 15.8 percent of Old Adaptive Holdings, which owned 95 percent of Old Adaptive. Memorandum at 4-5; Affidavit of Dennis Thums at ¶ 11. Mr. Mandler was Old Adaptive's second largest shareholder. Affidavit of Dennis Thums at ¶ 11. Mr. Mandler now serves as New Adaptive's Executive Vice President. Memorandum at 5.

New Adaptive changed its name to Adaptive MicroSystems, LLC which, of course, was the name of Old Adaptive. Memorandum at 4. It also leased Old Adaptive's real estate and continues to engage, by its own admission, in "a similar business to Old Adaptive's business." Exhibit 3 to Affidavit of Dennis Thums at ¶ 4e; Memorandum at 8. It has granted Mr. Mandler an ownership interest in New Adaptive and, recently, purchased Old Adaptive's real property that it had been leasing. Memorandum at 5; Exhibit 2 to Second Affidavit of Dennis Thums.

## ARGUMENT

### I.    Standard Of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

3

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "A party opposing a

properly supported motion for summary judgment 'may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that

there is a genuine issue of material fact for trial.'" *Id* (quoting Fed. R. Civ. P. 56(e)).

"[T]he material fact required by Rule 56(c) to be present to entitle a party to proceed to

trial is not required to be resolved conclusively in favor of the party asserting its

existence; rather, all that is required is that sufficient evidence supporting the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of

Arizona v. Cities Serv. Co.*, 391 U.S. 254, 288-89 (1968)).

II.    **New Adaptive Has Failed To Establish That It Is Entitled To Judgment As A Matter Of Law On The Issue Of Whether It Is Liable For The Debts Of Old Adaptive**

      As New Adaptive acknowledges in its motion, although a corporation that

purchases the assets of another corporation generally does not succeed to the liabilities of

the selling corporation, "[t]here are . . . four well-recognized exceptions to the general

rule under which liability may be imposed on a purchasing corporation." *Leannais v.

Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977).   Those exceptions are:

> (1) when the purchasing corporation expressly or impliedly
> agreed to assume the selling corporation's liability; (2)
> when the transaction amounts to a consolidation or merger
> of the purchaser and seller corporations; (3) when the
> purchaser corporation is merely a continuation of the seller
> corporation; or (4) when the transaction is entered into
> fraudulently to escape liability for such obligations.

4

*Id.* Evidence suggests that the transaction at issue here comes within both the second and third exceptions. There is, at the very least, a genuine issue of material fact as to whether it does.

### A. There Is A Genuine Issue Of Material Fact As To Whether This Transaction Amounted To A *De Facto* Merger

New Adaptive perfunctorily dismisses the applicability of the merger/consolidation exception because "Old Adaptive retained certain assets and liabilities and continues to exist to this day, albeit in receivership." Memorandum of Law at 11. Wisconsin law[2] requires the application of a far more nuanced test, however.

"Four factors are generally considered determinative of whether a transaction may be considered a *de facto* merger." *Sedbrook v. Zimmerman Design Group, Ltd.*, 526 N.W.2d 758, 760 (Wis. Ct. App. 1994). They are:

> (1) the assets of the seller corporation are acquired with shares of stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations.

*Id.* Although Wisconsin courts have called factor one "the key element," "not every factor need be present" to establish a *de facto* merger.[3] *Schawk v. City Brewing Co., LLC*, 2003 WL 1563767 at *4 (Wis. Ct. App. 2003) (unpublished disposition).

---

[2] As New Adaptive notes, all defendants are Wisconsin corporations or limited liability companies. Additionally, New Adaptive purchased Old Adaptive's assets during the course of Wisconsin Chapter 128 Receivership proceedings.

[3] In *Smith v. Meadow Mills*, 60 F. Supp. 2d 911, 917 (E.D. Wis. 1999), a United States District Court Judge opined, based upon *Fish v. Amsted Industries, Inc.*, 126 Wis. 2d 293 (1985), that "it would appear that the Wisconsin Supreme Court has effectively

Here, the evidence shows that the transaction at issue satisfies all four of these factors or, at a minimum, there is a genuine issue of material fact as to whether it does.

### Factor One: "the assets of the seller corporation are acquired with shares of stock in the buyer corporation, resulting in a continuity of shareholders"

With respect to factor one, although New Adaptive purchased Old Adaptive's assets with cash rather than shares of stock, New Adaptive concedes that there is at least some continuity of shareholders. Specifically, Thomas J. Mandler was the second-largest shareholder in Old Adaptive Holdings, which owned 95 percent of Old Adaptive. Mr. Mandler now owns a portion of New Adaptive.

Thus, this case is markedly different from the typical cases in which Wisconsin courts have determined that there was no *de facto* merger. *See, e.g., Smith*, 60 F. Supp. 2d at 918 ("it is undisputed that the ownership of the Company was transferred from the Finleys, Phillip Hubbard and Ann Carter to the Heges and Davises at the time of the purchase"); *Schawk*, 2003 WL 1563767 at *5 ("according to an affidavit filed by CBC Acquisition's president, the members of CBC Acquisition, LLC are 'entirely different' than the shareholders of [the company whose assets it purchased.]"); *Leannais*, 565 F.2d at 440 ("Nor did any shareholder of either corporation become an owner, director, or officer of the other.")

---

determined that, absent a transfer of stock ownership, other merger factors are insufficient to sustain application of the de facto merger exception." In the nearly 30 years since *Fish* was decided, however, the Wisconsin Supreme Court has never explicitly stated that this is the case. Furthermore, as the court in *Smith* noted, a conclusion that the transfer of ownership for stock rather than cash is the *sine qua non* of a *de facto* merger would be inconsistent with Wisconsin's statutory merger requirements, which provide that a corporation may merge into another corporation by converting its shares into "shares, obligations or other securities of the surviving corporation or any other corporation *or into cash* or other property in whole or in part." *Smith*, 60 F. Supp. 2d at 917, n.3 (quoting Wis. Stat. § 180.1101(c) (emphasis supplied by *Smith*)).

New Adaptive makes much of the fact that Mr. Mandler did not acquire his ownership interest until a few months after the acquisition took place. It also protests that Mr. Mandler's share of New Adaptive is small and does not include voting rights. Tellingly, New Adaptive cites no cases to support the notion that ownership interests acquired soon after an acquisition are irrelevant for successor liability purposes. Nor does New Adaptive cite any cases to support its view that commonality of ownership is irrelevant to the *de facto* merger analysis as long as the common owners only possess small, non-voting interests in the new company.

### Factor Two: "the seller ceases operations and dissolves soon after the sale"

There is also, at the very least, a genuine issue of material fact as to whether factor two has been satisfied in this case. Although Old Adaptive and Old Adaptive Holdings are, technically, still in business, they are not viable concerns. New Adaptive concedes that these companies are in receivership. Memorandum at 11. The receiver sold "substantially all" of Old Adaptive's assets to New Adaptive in August 2011. Exhibit 1 to Second Affidavit of Dennis Thums. And New Adaptive recently purchased Old Adaptive's real property from the receiver. Exhibit 2 to Second Affidavit of Dennis Thums. Thus, Old Adaptive appears poised for dissolution.

### Factor Three: "the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets and general business operations"

It also appears that factor three has been satisfied. At the outset, it should be noted that Mr. Thums' affidavits do not address the issues relevant to this factor. Specifically, he does not present any undisputed facts to establish that there is no continuity of management, employees, business location, assets and general business

operations between Old Adaptive and New Adaptive. For this reason alone, New

Adaptive is not entitled to summary judgment. *See* Fed.R.Civ.P. 56; *Anderson*, 477 U.S.

at 248.

In any event, the undisputed facts indicate that factor three has been satisfied.

The Court of Appeals of Wisconsin has rejected the notion that there must be complete

overlap of management to satisfy factor three. *Sedbrook*, 526 N.W.2d at 761 (continuity

of management requirement satisfied where two key personnel from old corporation

stayed on with successor corporation). New Adaptive concedes that Thomas J. Mandler,

the Executive Vice President of Old Adaptive continues in that role at New Adaptive.

Memorandum at 4-5. Although New Adaptive asserts in its memorandum of law[4] that

the "management of the companies is distinct[,]" the title of Executive Vice President

suggests that Mr. Mandler played a managerial role in both Old Adaptive and New

Adaptive. Mr. Mandler is an integral part of New Adaptive, given the company's

decision to grant him an ownership interest as "an inducement to retain [his] services and

reward with compensation for the resulting success of New Adaptive." Second Affidavit

of Dennis Thums at ¶ 8. He also attends and participates in Board of Directors meetings

for New Adaptive. Exhibit 4 to Second Affidavit of Dennis Thums. There is, at a

minimum, a genuine issue of material fact with respect to the issue of whether there is

continuity of management between Old Adaptive and New Adaptive.

New Adaptive has also conceded that that it hired "substantially all of the

employees of the Old Adaptive Defendants . . . ." Memorandum at 4-5. Thus, it appears

to have conceded that there is a continuity of employees between Old Adaptive and New

---

[4] Mr. Thums does not make this assertion in either of his affidavits.

Adaptive. At a minimum, there is a genuine issue of material fact with respect to this issue.

With respect to continuity of business locations, the asset purchase agreement specifically provides that the receiver will continue to lease certain Old Adaptive real estate to New Adaptive. Exhibit 3 to Affidavit of Dennis Thums at ¶ 4 e. New Adaptive has recently purchased that real estate from the receiver. Exhibit 2 to Second Affidavit of Dennis Thums. Thus, there is continuity of business location between Old Adaptive and New Adaptive. At a minimum, there is a genuine issue of material fact as to this issue.

New Adaptive purchased "substantially all" of Old Adaptive's assets in August 2011. Exhibit 1 to Second Affidavit of Dennis Thums. As noted above, it recently purchased for $2.1 million the Old Adaptive real estate that was excluded from the August 2011 sale. Exhibit 2 to Second Affidavit of Dennis Thums. Thus, there is continuity of assets between the Old Adaptive and New Adaptive. At a minimum, there is a genuine issue of material fact as to this issue.

New Adaptive concedes that it "has a similar business to Old Adaptive's business[.]" Memorandum at 8. Coupled with Mr. Mandler's role in both companies, the hiring of "substantially all" of Old Adaptive's employees, the acquisition of Old Adaptive's assets and real estate, and New Adaptive's adoption of Old Adaptive's name, it appears that there has been a continuity of business operations between the two companies. At a minimum, there is a genuine issue of material fact as to this issue.

**Factor Four: "the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations"**

New Adaptive concedes that it assumed certain liabilities of Old Adaptive. Memorandum at 3. Specifically, it agreed to assume liability for vacation accrued by those employees of Old Adaptive whom it hired, and to be liable for all obligations relating to customer deposits or payments. Exhibit 3 to Affidavit of Dennis Thums at ¶¶ 3 a and b. By assuming these liabilities, New Adaptive was able to maintain the normal business operations of Old Adaptive. At the very least, there exists a genuine issue of material fact as to whether New Adaptive assumed the liabilities of Old Adaptive necessary for the uninterrupted continuation of New Adaptive's business operations.

**B. There Is A Genuine Issue Of Material Fact As To Whether New Adaptive Is Merely A Continuation Of Old Adaptive**

Summary judgment would also be inappropriate at this juncture because there is a genuine issue of material fact about whether New Adaptive is merely a continuation of Old Adaptive.

New Adaptive concedes that "the 'continuation' exception is less clearly defined than the other three. Case by case, the presence or absence of a continuation has been searched out in the particular circumstances." Memorandum at 8 (quoting *Parson v. Roper Whitney, Inc.*, 586 F.Supp. 1447, 1450 (W.D. Wis. 1984). "In cases where a purchasing corporation has been found to be a continuation of the seller, except for a change in ownership, the purchaser has represented 'merely a new hat for the seller' and has been a reincarnation of the original corporation." *Id* (quoting *Armour-Dial Inc. v. Alkar Engineering Corp.*, 469 F.Supp. 1198, 1201 (E.D. Wis. 1979)). "The key element

10

of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Leannais*, 565 F.2d at 441.

Here, as explained above, there is significant overlap between Old Adaptive and New Adaptive. Mr. Mandler was Executive Vice President and an owner of Old Adaptive and he continues in those roles with New Adaptive. Citing *Explosives Corp. of America v. Garlam Enter. Corp.*, 615 F. Supp. 364, 368 (D.P.R. 1985), New Adaptive argues that "the hiring of Thomas Mandler as an Officer of New Adaptive is not sufficient to find that there is identity of officers, directors and stockholders" Memorandum at 9.

There are multiple problems with this argument. First, New Adaptive fails to acknowledge that Mr. Mandler was not simply an officer of both companies, he was also an owner of both companies. Additionally, it should be noted that *Explosives Corp.* was not the decision of a Wisconsin court – either state or Federal – and did not require the application of Wisconsin successor liability law.

In any event, *Explosives Corp.* is of no help to New Adaptive. *Explosives Corp.* held that "[a]lthough common management and ownership are *a* crucial element in determining 'continuation,' other factors must be considered in order to impose liability upon the successor." *Explosives Corp.*, 615 F. Supp. at 368 (emphasis in original). Central to that court's conclusion that there was no successor liability was that the seller corporation dissolved and its trade name and operations were discontinued upon acquisition by the purchaser. *Id* at 369. Additionally, the court noted that it was "uncontroverted that [the purchaser] did not continue [the seller's] business of manufacturing and distributing explosives products." *Id* at 369.

11

Here, however, New Adaptive specifically adopted Old Adaptive's name and, by its own admission, hired substantially all of Old Adaptive's employees, and has a similar business to Old Adaptive's. Thus, this case is readily distinguishable from *Explosives Corp.* The aforementioned facts, coupled with Mr. Mandler's ownership and executive role at both companies, create a genuine issue of material fact as to whether New Adaptive is a mere continuation of Old Adaptive.

<h2 style="text-align:center">CONCLUSION</h2>

For these reasons, the United States respectfully requests that this Court deny New Adaptive's motion for summary judgment.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

BRIAN M. HOLT
Office of Associate Chief Counsel
U.S. Customs and Border Protection
610 South Canal, Suite 767
Chicago, IL 60607

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

/s/ J. Hunter Bennett
J. HUNTER BENNETT
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-2279
j.hunter.bennett@usdoj.gov

Dated: January 25, 2013

Attorneys for the United States

12

4915 S. Howell, Suite 200
Milwaukee, WI 53207



U.S. Customs and
Border Protection

JUL 2 7 2011

### CERTIFIED MAIL RETURN RECEIPT REQUESTED

Adaptive Micro Systems, LLC
7840 N. 86th Street
Milwaukee, Wisconsin 53224-3430

      Re:   Port of Milwaukee Case No. 2010-3701-300016-01

Dear Sir or Madam:

On June 9, 2011, a pre-penalty notice and notice of unpaid duties was issued by U.S. Customs and Border Protection ("CBP") to Adaptive Micro Systems, LLC ("AMS") for alleged violations of Title 19, United States Code, Section 1592 (19 U.S.C. § 1592). AMS was given an opportunity to respond to the pre-penalty notice and notice of unpaid duties, but AMS did not do so. Therefore, CBP, as set forth in the enclosed Notice of Penalty, is assessing a penalty against AMS under 19 U.S.C. § 1592(c) in the amount of $6,202,576.07, plus restoration of unpaid duties of $595,658.71 under 19 U.S.C. § 1592(d).

There are no changes to the information concerning the violation set forth in the pre-penalty notice and pre-penalty statement of June 9, 2011. Copies of the pre-penalty notice and pre-penalty statement are attached to the enclosed Penalty Notice, 5955A, as Exhibit A, and Exhibit B includes the consumption entries involved in this matter.

As stated in the June 9, 2011 pre-penalty notice and notice of unpaid duties, CBP is in receipt of a letter dated May 5, 2011 from attorney Michael S. Polsky with the law firm of Beck, Chaet, Bamberger & Polsky, S.C. The May 5, 2011 letter from Mr. Polsky concerns the receivership of Adaptive Micro Systems, LLC and Adaptive Micro Systems Holdings, Inc. (collectively "AMS LLC/INC.") under Chapter 128 of the Wisconsin Statutes. The May 5, 2011 letter from Mr. Polsky informed CBP, among other things, that Mr. Polsky had been appointed receiver for AMS LLC/INC. The letter from Mr. Polsky also enclosed a copy of an Order Appointing Receiver, Enjoining Creditors, and Granting Other Relief, which is dated April 26, 2011 ("Order"), as well as copies of other notices filed in the receivership action, U.S. Bank National Association v. AMS LLC/INC., Case No. 11-CV-5894, in the Circuit Court of Milwaukee County in the State of Wisconsin. A copy of the May 5, 2011 from Mr. Polsky, along with copies of its enclosures, was sent to AMS with CBP's June 9, 2011 pre-penalty notice and notice of unpaid duties. Accordingly, please refer to the agency's June 9, 2011 correspondence for these documents. If AMS has misplaced any of these documents, please let us know, and we will provide them to you again.

We reiterate CBP's position in its June 9, 2011 pre-penalty notice and notice of unpaid duties that as a matter of law, the United States is entitled to have the penalty and unpaid duty "paid first" pursuant to 31 U.S.C. § 3713 inasmuch as the state receivership action is not "a case under Title 11" of the United States Code.  Also, because AMS is not an insurance company, the matter is not governed to any extent by Department of Treasury v. Fabe, 508 U.S. 491 (1993).  Notably, Fabe does not operate to compel CBP to take pursuant to Wisconsin's priority statute rather than 31 U.S.C. § 3713.

Under the provisions of Title 19, United States Code, Section 1618 (19 U.S.C. § 1618), and Part 171 of the Customs Regulations, you may petition for relief within 60 days from the date of this letter.  All petitions should be filed in duplicate and addressed to: Port Director, U.S. Customs and Border Protection, Attn: FP&F, 4915 S. Howell Avenue, Suite 200, Milwaukee, Wisconsin 53207.  All correspondence must include the above-referenced case number.  You may also make an oral presentation seeking mitigation.  If you wish to make an oral presentation, please contact me at 414-486-7790, extension 122 to arrange a mutually convenient time and date for the presentation.  We prefer that any written response be submitted at or before the oral presentation.

Sincerely,

Katherine F. Kramarich
Fines, Penalties & Forfeitures Officer

Enclosure

cc:  Michael S. Polsky, Esq., Wis. Stats. Chapter 128 Receiver (w/enclosure)

U.S. Customs and Border Protection     F02     2010370130001601

# NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED AND DEMAND FOR PAYMENT

19 USC 1618, 19 USC 1623

Port Name and Code

3701 SERVICE PORT OF MIL

Investigation File No.

ID: 16168450300

TO:  ADAPTIVE MICRO SYSTEMS LLC
7840 N. 86TH STREET
MILWAUKEE        WI    53224

PAGE 1 OF 1

DEMAND IS HEREBY MADE FOR PAYMENT OF $ 6,202,576.07 representing [X] Penalties or [ ] Liquidated Damages assessed against you for violation or law or regulation, or breach of bond, as set forth below:

ADAPTIVE MICRO SYSTEMS, LLC ENTERED OR INTRODUCED AND/OR ATTEMPTED TO ENTER/ INTRODUCE AND/OR CAUSED THE ENTRY/INTRODUCTION OF ELECTRONIC MESSAGE DISPLAYS AND PARTS THEREOF VIA 579 ENTRIES FILED BETWEEN JULY 2005 AND APRIL 2010, IDENTIFIED IN THE ATTACHED CBP PRE-PENALTY NOTICE DATED JUNE 9, 2011 AND THE ATTACHED APPRAISAL WORKSHEET, INTO THE COMMERCE OF THE UNITED STATES BY MATERIAL FALSE STATEMENTS, ACTS OR MATERIAL OMISSIONS. SPECIFICALLY, ADAPTIVE MICRO SYSTEMS, LLC PROVIDED FALSE DESCRIPTIONS, TARIFF CLASSIFICATION NUMBERS, AND/OR DUTY RATES ON THE ENTRIES AND/OR INVOICES SUBMITTED TO CBP FOR THE SUBJECT ENTRIES.
LEVEL OF CULPABILITY: GROSS NEGLIGENCE      LOSS OF REVENUE: $595,658.71

COMMERCIAL FRAUD 1592

| LAW OR REGULATION VIOLATED | BOND BREACHED |
|---|---|
| 19USC1592 | |

| DESCRIPTION OF BOND (if any) | Form Number | Amount $ | Date |
|---|---|---|---|
| Name and Address of Principal on Bond | | | |
| Name and Address of Surety on Bond | | | Surety Identification No. |

If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation. Write the petition as a letter or in legal form; submit in (duplicate) (triplicate), addressed to the Commissioner of Customs and Border Protection, and forward to the FP & F Officer at:

4915 S HOWELL AVE, STE 200, MILWAUKEE, WI 53207

Unless the amount herein demanded is paid or a petition for relief is filed with the FP & F Officer within the indicated time limit, further action will be taken in connection with your bond or the matter will be referred to the United States Attorney.

TIME LIMIT FOR PAYMENT OR FILING PETITION FOR RELIEF (Days from the date of this Notice)    .60

| Signature | Title | Date |
|---|---|---|
| By | AGTO FP&FO (414)486-7790X122 | 07/27/2011 (07/27/2011) |

CBP Form 5955A (08/01)