Slip Op. 13- 50

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Nicholas Tsoucalas, Senior Judge**

_____
UNITED STATES,                         :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :     Court No.: 12-00122
                                       :
ADAPTIVE MICROSYSTEMS, LLC, AMS        :
CHAPTER 128, LLC, and AMS HOLDINGS     :
CHAPTER 128, INC.,                     :
                                       :
          Defendants.                  :
_____:

### OPINION and ORDER

**Held**: Defendant Adaptive MicroSystems, LLC's motion for summary judgment is granted in part and denied in part. Defendant's motion for sanctions is denied.

Dated: April 10, 2013

Stuart F. Delery, Principal Deputy Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Civil Division, United States Department of Justice, (Daniel B. Volk, J. Hunter Bennett, Nelson Ryan Richards); Brian M. Holt, Of Counsel, Office of the Associate Chief Counsel, United States Customs and Border Protection, for the United States, Plaintiff.

Reinhart Boerner Van Deuren, s.c., (David G. Peterson) for Adaptive MicroSystems, LLC, Defendant.

**TSOUCALAS, Senior Judge:** Defendant Adaptive MicroSystems, LLC ("New AMS") moves for summary judgment pursuant to USCIT Rule 56 on plaintiff United States Department of Homeland Security, Customs and Border Protection's ("Customs") claim for unpaid import duties and penalties under sections 592(c) and (d) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1592(c), (d) (2006). New AMS's Mem.

Supp. Mot. Summ. J. 2 ("New AMS's Mem."). New AMS also moves to impose sanctions under USCIT Rule 11, alleging Customs acted unreasonably in filing and continuing to pursue this action. New AMS's Mem. Supp. Mot. Sanctions 4 ("New AMS's Sanctions Mem."). Customs opposes both motions, and no other party joins in the motions or opposition.

**BACKGROUND**

New AMS seeks summary judgment on Customs's allegation that it is responsible for the debts of a now-defunct Wisconsin company named Adaptive MicroSystems, LLC ("Old AMS"). Customs avers that Old AMS intentionally or negligently misclassified imports of light emitting diode display panels and related components ("LED panels") from Malaysia under duty-free tarriff headings from July 2005 until April 2010. Pl.'s Compl. 2 & Ex. A; see Answer of Michael S. Polsky to Pl.'s Compl. 3. During all or some of that time, Thomas Mandler ("Mr. Mandler") owned a 15.8% share of another Wisconsin company called Adaptive MicroSystems Holdings, Inc. ("Old AMS Holdings"), which in turn owned 95% of Old AMS. Thums Aff. 1st Ex. 6 at 2, 5. Mr. Mandler was also an Old AMS officer during that period, serving as its executive vice president. Thums Aff. 2d at 2.

On April 20, 2011, US Bank National Association ("US Bank") initiated a receivership action against Old AMS and Old AMS

Holdings pursuant to Chapter 128 of the Wisconsin Statutes.[1]

Complaint, US Bank Nat'l Assoc. v. AMS Chapter 128 LLC,

2011CV005894 (Wis. Cir. Ct. Milwaukee Cnty. Apr. 20, 2011).  The

Milwaukee County Circuit Court (the "Milwaukee Court") appointed

Michael S. Polsky ("the Receiver") as the receiver for Old AMS and

Old AMS Holdings six days later.  Thums Aff. 2d Ex. 1 at 1-2.

Customs acknowledges that the Receiver provided notice of his

appointment and the existence of the receivership action on May 5,

2011.  Pl.'s Resp. New AMS's Mem. Ex. A at 1 ("Pl.'s Resp.").

Customs chose not intervene in the receivership action due to

its priority creditor status under 31 U.S.C. § 3713, see Pl.'s

Resp. Ex. A at 2, leaving US Bank as the creditor with highest

priority among those participating.  Thums Aff. 2d Ex. 1 at 2.  On

June 9, 2011 — more than one month after Old AMS entered

receivership — Customs issued a pre-penalty notice of unpaid duties

to Old AMS describing the same alleged misconduct at issue in this

suit.  Pl.'s Resp. Ex. A at 1.  Having apparently received no

response from Old AMS, Old AMS Holdings, or the Receiver, Customs

issued a penalty notice on July 27, 2011 demanding payment of

outstanding duties and penalties totaling about $6.8 million.  Id.

at 1-2.

At the Milwaukee Court's direction, the Receiver conducted an

---

[1] New AMS describes receivership under Chapter 128 as "the
Wisconsin State functional equivalent of a federal Chapter 7
bankruptcy."  New AMS's Mem. at 2.

auction on August 2, 2011 in an attempt to sell Old AMS's assets. Thums Aff. 2d Ex. 1 at 2.   The auction produced three bids inconsistent with the auction terms and no bids at or above the estimated liquidation value of the assets.  Id.  US Bank refused to consent to any of the bids, leading the Receiver to decline acceptance of each.   Id.

On August 9, 2011, the Receiver entered into a purchase agreement with a Wisconsin company named AMS Acquisition, LLC ("AMS Acquisition"), id. at 2-3, whereby AMS Acquisition would "operate the business of [Old AMS] and its affiliates." Id. Ex. 3 at § 1.1. The court-approved sale transferred most of Old AMS's assets[2] to AMS Acquisition at a price above their estimated liquidation value. Id. Ex. 1 at 2-3.   The deal also required AMS Acquisition to hire a substantial number of Old AMS's employees in their old positions, including the appointment of Mr. Mandler as executive vice president. Thums Aff. 1st Ex. 3 at 10.  The record is unclear as to whether any officers besides Mr. Mandler retained their positions. See id.; Thums Aff. 2d Ex. 3 at §§ 6.9(a), (g).

The Milwaukee Court described the sale as "the product of good

---

[2]   AMS Acquisition purchased all of Old AMS's tangible and intangible property except: stock in Thai and German subsidiaries, cash, potential legal claims, insurance policies, leased equipment, and certain real estate holdings in Wisconsin.  Thums Aff. 1st Ex. 3 at 3; Thums Aff. 2d Ex. 1 at 2-3.  AMS Acquisition also agreed to rent Old AMS's office space in Milwaukee, Thums Aff. 1st Ex. 3 at 4-5, which New AMS thereafter bought in a court-approved sale on September 20, 2012.  Thums Aff. 2d at Ex. 2.

faith negotiations at arm's length and without collusion." Thums
Aff. 2d Ex. 1 at 3.  However, the Milwaukee Court did not address
Customs's potential claim in its order, providing no indication as
to whether it was aware of the penalty notice when it approved the
sale.[3]  See id. Exs. 1, 2.  In this context, the court approved of
a provision exonerating AMS Acquisition from all liability,
"whether absolute or contingent, known or unknown" that may be
looming against Old AMS, and held specifically that the sale
transferred the assets "free and clear of all security interest,
liens, claims, encumbrances, or interests of any kind or nature."
Id. Ex. 1 at 4 (emphasis and strikethrough omitted).

    Old AMS, Old AMS Holdings, and AMS Acquisition all changed
their corporate names after completing the sale.  Thums Aff. 1st at
1-2.  Old AMS and Old AMS Holdings became AMS Chapter 128, LLC and
AMS Holdings Chapter 128, Inc., respectively, while AMS Acquisition
assumed the "Adaptive MicroSystems, LLC" trade name to become New
AMS.  Id.  New AMS is owned by a Wisconsin company named AMS

---

    [3] New AMS asserts that "the [Milwaukee Court] had all the
facts before it." New AMS's Mem. at 11.  However, New AMS cites no
record evidence in support of this claim and the court is unable to
find any on its own.  Neither the pre-penalty notice nor the
penalty notice appear on the Milwaukee Court docket, and there are
no entries showing conclusively that Customs's potential claim was
raised at all in the receivership action.  US Bank Nat'l Assoc.,
2011CV005894, Nos. 1-215.  The docket does include one entry for a
"CONTINUED HEARING AS TO FEDERAL PRIORITY" after the sale on
September 22, 2011, but the entry contains no further specification
as to whether it refers to a potential United States government
claim, and if so, whether the claimant is Customs, the Internal
Revenue Service, or some other federal entity.  Id. No. 146.

Holdings, LLC, which at the time of the receivership sale had no relationship whatsoever with Old AMS or Old AMS Holdings.  Id. at 2-4.

After the sale, however, New AMS transferred 400 shares of class B stock to Mr. Mandler, entitling him to 2% of New AMS's profits but no voting rights.  Thums Aff. 2d Ex. 4 at 1-2.  The stock vests 100 shares at a time for each year Mr. Mandler remains employed with New AMS, beginning on October 1, 2011.  At present, 200 of Mr. Mandler's 400 shares have vested.  Id. at 5.

On May 3, 2012, Customs initiated the present action against New AMS, Old AMS, and Old AMS Holdings, alleging that "[u]pon information and belief, New [AMS] purchased some portion of Old [AMS] out of receivership and is liable for Old [AMS]'s debts." Pl.'s Compl. 2.  New AMS now moves for summary judgment and sanctions, arguing that it "did not succeed to Old [AMS]'s alleged liability for unpaid duties and penalties" and that "[t]he facts . . . are undisputed as they relate to New [AMS]'s purchase of Old [AMS]'s assets and non-assumption of liabilities."  New AMS's Mem. at 7; see New AMS's Sanctions Mem. at 4.  In response, Customs insists that the facts demonstrate, "at the very least," the existence of a genuine issue of material fact as to whether New AMS falls into one of the four common law exceptions to the Wisconsin

general rule against successor liability.[4]  Pl.'s Resp. at 4-5.

## JURISDICTION and STANDARD OF REVIEW

When reviewing a motion for summary judgment, "the Court evaluates 'the pleadings, the discovery and disclosure materials on file, and any affidavits' in order to determine whether there is any 'genuine issue as to any material fact' and, if none exists, whether the 'movant is entitled to judgment as a matter of law.'" United States v. Trek Leather, Inc., 35 CIT __, __, 781 F. Supp. 2d 1306, 1310 (2011) (quoting USCIT R. 56(c)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  An issue of fact is material "if it could affect the outcome of the suit under the governing law."  Trek Leather, Inc., 35 CIT at __, 781 F. Supp. 2d at 1310 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The non-moving party is 'entitled to have both the evidence viewed in the light most favorable to it and all doubts resolved in its favor.'"  Mazak Corp. v. United States, 33 CIT __, __, 659 F. Supp. 2d 1352, 1356 (2009) (quoting Guess? Inc. v. United States, 944 F.2d 855, 858 (Fed. Cir. 1991)).

## ANALYSIS

### I. Comity

As a preliminary matter, New AMS argues that the court "should respect the Order from the Chapter 128 proceedings under the

---

[4] The parties agree that Wisconsin substantive law governs the successor liability issue.

principle of comity." New AMS's Mem. at 7 n.5. New AMS is presumably referring to the Milwaukee Court's "conclusion[] of law" that New AMS "shall not be liable for any of the Receiver's, [Old AMS Holdings]'s or [Old AMS]'s debts, liabilities or obligations, except those expressly assumed" in the asset purchase agreement. Thums Aff. 2d Ex. 1 at 4 (emphasis omitted).

"When there is parallel state and federal litigation . . . [c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 281-82 (2005). Other than cursory references to the interest of comity, New AMS does not articulate any legal standard that counsels or obliges the court to defer judgment in this matter. See New AMS's Mem. at 7 n.5, 11; New AMS's Reply Supp. M. Summ. J. 7 ("New AMS's Reply").[5] The Milwaukee Court did not have an opportunity to consider the transfer of New AMS shares to Mr. Mandler because the shares did not change hands until after it issued the order. Thums Aff. 2d Ex. 4 at 1-2. Furthermore, the Milwaukee Court apparently did not consider any potential claim Customs may have held on the estate of

---

[5] Without explanation, New AMS cites to one case with a passing reference to comity in dicta. See New AMS's Mem. at 7 n.5, 11 (citing Washington Int'l Ins. Co. v. United States, 25 CIT 207, 218, 138 F. Supp. 2d 1314, 1326 (2001)); New AMS's Reply at 7 (citing Washington Int'l Ins. Co., 25 CIT at 218, 138 F. Supp. 2d at 1326).

Old AMS at the time of the sale.  See id. at Exs. 1, 2; US Bank Nat'l Assoc., 2011CV005894, at Nos. 1-215.  Lastly, Customs was not a party to the Milwaukee Court proceeding and therefore did not have a full opportunity to be heard on the asset sale or any successor liability issues.

As the court sees little reason to defer to a state court judgment rendered before significant facts emerged and in the absence of a party asserting a claim in this action, it declines to rule in New AMS's favor on the basis of comity alone.

## II. Successor Liability

"In Wisconsin, the general rule is a corporation who purchases the assets of another corporation does not succeed to the liability of the selling corporation."[6]  Compuware Corp. v. Innovatec Commc'ns, LLC, No. 03-C-429, 2005 WL 2076717 at *14 (E.D. Wis. Aug. 24, 2005) (citing Columbia Propane, L.P. v. Wis. Gas Co., 661 N.W.2d 776, 784 (Wis. 2003)).  "Important policies underlie the general rule," including consistency with "the fundamental principle[s] of justice and fairness" and the promotion of "free alienability of corporate assets."  Gallenberg Equip., Inc. v. Agromac Intern., Inc., 10 F. Supp. 2d 1050, 1053 (E.D. Wis. 1998),

---

[6] Although many of the entities involved here are limited liability companies, not corporations, "the [successor liability] rule and its exceptions are applicable[] irrespective of whether a prior organization was a corporation or a different form of business organization."  Tift v. Forage King Indus., Inc., 322 N.W.2d 14, 16 (Wis. 1982).

aff'd, 191 F.3d 456 (7th Cir. 1999) (quoting Leannais v. Cincinnati, Inc., 565 F.2d 437, 439 (7th Cir. 1977)) (internal quotation marks omitted).  Nevertheless, there are four exceptions to the general rule.  A purchasing corporation succeeds to the selling corporation's liabilities (1) when the purchaser expressly or impliedly agrees to assume the seller's liability; (2) when the transaction amounts to a consolidation or merger; (3) when the purchaser is a "mere continuation" of the selling corporation; or (4) when the transaction is a fraudulent attempt to escape liability for such obligations.  Id.  Customs argues that summary judgment is not proper as material issues remain as to the second and third exceptions.[7]  Pl.'s Resp. at 4-5.

"Exceptions (2) and (3) are tests of identity under which the substance and effect of business transformations are examined 'to determine whether the original organization continues to have life or identity in a subsequent and existing organization . . . .'" Parson v. Roper Whitney, Inc., 586 F. Supp. 1447, 1449 (W.D. Wis. 1984) (quoting Tift, 322 N.W.2d at 17).  These exceptions target business realities as they exist notwithstanding formalistic differences between the buying and selling entities.  See Leannais,

---

[7] Because the parties have conducted minimal discovery at this stage, the court recognizes that new facts may emerge later in the action that present a triable issue of fact on these or other matters.  See Whitford v. Boglino, 63 F.3d 527, 530 (7th Cir. 1995) (A "district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist.").

565 F.2d at 439-40.   "A court merely need determine that the [buyer], despite business transformations, is substantially the same as the original [entity]."  Fish v. Amsted Indus., Inc., 376 N.W.2d 820, 824 (Wis. 1985) (quoting Tift, 322 N.W.2d at 17).

### A. De Facto Merger

Customs does not dispute that the transfer at issue fails to meet the traditional definitions of merger and consolidation. Pl.'s Resp. at 5; see Leannais, 565 F.2d at 439-40 (defining merger and consolidation).   Instead, it argues that the present circumstances give rise to an issue of material fact as to whether the transaction "amounts to a merger."  Sedbrook v. Zimmerman Design Group, Ltd., 526 N.W.2d 758, 760 (Wis. Ct. App. 1994) (emphasis omitted); see Pl.'s Resp. at 5.  New AMS counters that the transaction did not amount to a merger because it acquired Old AMS's assets using cash rather than stock.  New AMS's Reply at 2.

Wisconsin courts employ a four-factor analysis to determine whether a transaction is a "de facto merger" within the merger-consolidation exception:

> (1) the assets of the seller corporation are acquired with shares of stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, and business location, assets, and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations.

Smith v. Meadows Mills, Inc., 60 F. Supp. 2d 911, 917 (E.D. Wis.

1999) (quoting Sedbrook, 526 N.W.2d at 760-61). Courts describe the stock transfer factor as the "key" feature of a de facto merger. Sedbrook, 526 N.W.2d at 760-62; see Leannais, 565 F.2d at 439-40 ("[A] 'de facto merger' may be found if the consideration given by the [buyer] be shares of its own stock.").

Customs argues that New AMS's relationship to Old AMS is sufficient to satisfy the stock transfer factor because, "although New [AMS] purchased Old [AMS]'s assets with cash rather than shares of stock," it is undisputed "that there is at least some continuity of shareholders." Pl.'s Resp. at 6. Further, Customs asserts that Wisconsin courts have only rejected the de facto merger exception in cases where there was no shared ownership between buying and selling corporations. Id. Customs also argues that there is no legal authority explicitly stating that non-voting shares or a delay in exchanging shares "are irrelevant for successor liability purposes." Id. at 7.

Courts interpreting Wisconsin law consistently refuse to apply the de facto merger exception when no shares have changed hands, regardless of the extent to which the other factors may be satisfied. E.g., Smith, 60 F. Supp. 2d 911 (no de facto merger despite substantial continuity of business operations between buyer and seller because buyer paid in cash). Once some stock is exchanged, however, Wisconsin law is less clear on how much the second, third, and fourth factors may counterbalance an incomplete

stock transfer.  See Sedbrook, 526 N.W.2d at 762 & n.3 (transfer of minority stock interest can be sufficient to establish the presence of a de facto merger, depending on other factors); Schawk, Inc. v. City Brewing Co., 662 N.W.2d 679, 2003 WL 1563767 at *4 (Wis. Ct. App. 2003) (unpublished opinion noting that "not every factor need be present").

Even assuming Wisconsin law is as expansive as Customs insists, the uncontroverted facts demonstrate that Mr. Mandler did not receive his shares as consideration for the receivership sale. See Restatement 2d of Contracts, § 71 (2012) (defining consideration as a "bargained for" exchange).  The sale of assets in Chapter 128 receivership is an exchange between the assigned receiver and the purchaser, see Wis. Stat. § 128.02(3)(b) (2013); Thums Aff. 1st at Ex. 1, and there is no evidence to suggest that the Receiver sought stock for Mr. Mandler's personal portfolio as a condition of sale.  Indeed, New AMS president Dennis Thums states that "there were no plans or agreements in place to allow [Mr. Mandler] to become a shareholder" at the time of the asset purchase.  Thums Aff. 2d at 2.  Customs acknowledges that Mr. Mandler received his ownership stake six months after the Wisconsin court approved the asset sale, Pl.'s Resp. at 7, indicating that the stock exchange was unrelated to the negotiation of the deal itself.  Lastly, Customs does not present any evidence that contravenes record evidence characterizing Mr. Mandler's stock as

a deferred employment package unrelated to the asset purchase.  See
Thums Aff. 2d at 2.

Because the undisputed facts are insufficient as a matter of
law to support a conclusion that New AMS offered Mr. Mandler shares
in consideration to the Receiver for Old AMS's assets, the de facto
merger exception cannot apply.  Accordingly, New AMS's motion for
summary judgment is granted with respect to the de facto merger
exception.

## B. Mere Continuation

New AMS argues that it is "not a mere continuation of [Old
AMS]" because it has a somewhat different business model than Old
AMS, has a new president who was never affiliated with Old AMS, and
has a completely different set of directors and shareholders — the
only exception being Mr. Mandler, who acquired his shares six
months after the asset purchase agreement.  New AMS's Mem. at 8-9.
Customs, on the other hand, argues that New AMS is a mere
continuation of Old AMS because there is "significant overlap"
between the two companies, specifically in that New AMS hired
"substantially all" of Old AMS's employees, continued operating
under a "similar business" model, and most importantly, retained
Mr. Mandler as both an owner and officer.  Pl.'s Resp. at 11-12.
As these differences constitute a genuine issue of fact material to
whether New AMS can be considered a mere continuation of Old AMS,
New AMS's motion must be denied insofar as it relates to this

exception.

"The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporations." Parson, 586 F. Supp. at 1450 (quoting Leannais, 565 F.2d at 441) (internal quotation marks omitted).  Thus, the test is not whether the business operations continue, but whether the purchaser is simply a "continuation of the corporate entity" of the seller.  Id.  The Wisconsin Supreme Court unambiguously rejected "modified theories of continuity crafted by other courts," including the product line and continuity of enterprise exceptions. Smith, 60 F. Supp. 2d at 918.  Nevertheless, Wisconsin courts will consider factors like continued enterprise if there is overlap in ownership and control.  See Gallenberg, 10 F. Supp. 2d at 1053-54.

New AMS insists that Wisconsin law requires an "identity of officers, directors and stockholders."  New AMS's Reply at 6 (emphasis in original).  This phrasing implies that New AMS is arguing that the mere continuation exception only applies where buyers share at least one officer, one director, and one stockholder with their sellers.  See id. at 6-7.  Accordingly, New AMS concludes that the lack of overlap between directors and the lack of overlap between ownership interests at the time of the asset sale indicates that there is no issue of material fact as to the mere continuation exception.  Id.

New AMS's interpretation of Wisconsin law is not persuasive.

Wisconsin courts do not require absolute identity between controlling forces in the buying and selling corporation. See, e.g., Home Indem. Co v. Farm House Foods Corp., 770 F. Supp. 1339 (E.D. Wis. 1991) (applying the mere continuation exception where predecessor and successor companies shared a "majority" of officers, directors, and shareholders); Nelson v. Hebert Const. Co., 482 N.W.2d 670 (Wis. Ct. App. 1992) (unpublished opinion finding lack of "substantial identity" in a situation with slight overlap between predecessor and potential successor company). Further, the crux of the mere continuation analysis is not in measuring the specific numbers of shared officers, directors, and stockholders as New AMS suggests — rather, it is in determining whether the combined effect of some shared control and ownership,[8] along with other considerations, establish that the selling corporation is merely "changing hats" through the sale. See Gallenberg, 10 F. Supp. 2d at 1054. Though neither party identifies authority directly on point, these two settled aspects of Wisconsin law render it unlikely that a Wisconsin court would require at least one officer, director, and owner in common between the buying and selling companies as a prerequisite for applying the mere continuation exception. See Smith, 60 F. Supp. 2d at 918

---

[8] Wisconsin courts will not apply the mere continuation exception "in the complete absence of continuity in stockholders, directors and officers." Parson, 586. F. Supp. at 1450-52 (emphasis added); see Sedbrook, 526 N.W.2d at 761.

(treating "management and control" as characteristics distinct from "continuity of ownership" for purposes of the mere continuation exception); cf. IGL-Wisc. Awning, Tent & Trailer Co. v. Greater Milwaukee Air & Water Show, Inc., 520 N.W.2d 279, 280-81 (Wis. Ct. App. 1994) (affirming trial court finding of "identity of management and control" under mere continuation exception where director and vice president of prior non-profit company was one of several founders of the successor non-profit company).

Here, one owner of Old AMS, Mr. Mandler, now holds a class B ownership interest in New AMS. Thums Aff. 2d Ex. 4 at 1-3. Although New AMS does have a different set of directors than Old AMS, a reasonable interpretation of meeting minutes on the record show Mr. Mandler playing an active and influential role in guiding New AMS's board of directors. See id. at 4-6. New AMS employs "substantially all" of same people as Old AMS to carry out those business operations, including Mr. Mandler and possibly other Old AMS officers. See Thums Aff. 1st Ex. 3 at 10; New AMS's Mem. at 8-9 (mentioning directors and owners, but not officers). Furthermore, New AMS acquired substantially all of Old AMS's assets, Thums Aff. 2d Ex. 1 at 2-3, and operates a similar business under the same trade name out of some of the same physical addresses. New AMS's Mem. at 4; Thums Aff. 1st Ex. 3 at 4-5. On these facts, a reasonable jury could find that Mr. Mandler's ownership share and influence on New AMS's board — coupled with the

otherwise substantial overlap between Old AMS and New AMS —
outweighs his non-voting status and the lack of shared directors in
defining New AMS's corporate identity.  See Mazak, 33 CIT at __,
659 F. Supp. 2d at 1356 (quoting Guess? Inc., 944 F.2d at 858).

Although new undisputed facts may emerge through additional
discovery showing that Mr. Mandler has a de minimis influence on
New AMS's corporate identity, the record is insufficient at present
to support that conclusion as a matter of law.  See id.; Whitford,
63 F.3d at 530.  Consequently, New AMS's motion for summary
judgment must be denied as to the mere continuation exception.

### III. SANCTIONS

Eleven days after Customs filed its response to the motion for
summary judgment, New AMS moved to impose USCIT Rule 11 sanctions.
New AMS asserts that "[d]espite repeated requests to dismiss, and
despite conclusive proof that New [AMS] bears no liability in this
lawsuit and [Customs's] claims against it are baseless, [Customs]
has continued to pursue its claims against New [AMS]."  New AMS's
Sanctions Mem. at 4.  New AMS further alleges that Customs should
be sanctioned because "[i]t appears that [Customs's] pre-filing
investigation was insufficient."  Id. at 6.[9]

---

[9] New AMS also "wonders at [Customs's] motives for including
New [AMS] in this suit," alleging that "[t]o the extent that
[Customs] sued New [AMS] . . . in hopes that New [AMS] might pay to
be dismissed from this litigation, the claims against New [AMS]
were brought for an improper purpose."  New AMS's Sanctions Mem.
at 7.  New AMS provides no legal or factual support for this
additional charge other than its own insistence that it cannot be

USCIT Rule 11 "is identical to Federal Rule of Civil Procedure Rule 11[,] . . . and it therefore is appropriate to look to decisions under the latter in interpreting and applying" the former.  Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1353 (Fed. Cir. 2003) (quoting A. Hirsh, Inc. v. United States, 948 F.2d 1240, 1246 (Fed. Cir. 1991)) (internal quotation marks omitted).  "In general, 'the standard for triggering the award of fees under Rule 11 is objective unreasonableness." Murray v. Town of N. Hempstead, 853 F. Supp. 2d 247, 276 (E.D.N.Y. 2012) (quoting Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000)).  "To determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990); see View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 984-87 (Fed. Cir. 2000) (discussing reasonableness of prefiling inquiry in the context of a patent dispute).

Contrary to New AMS's assertions, Customs is not pursuing a baseless or frivolous claim.  As described above, the complex procedural posture and unsettled legal and factual backdrop of this case demonstrate that, at a minimum, Customs raises issues of material fact at this stage.  Furthermore, Customs presents evidence showing that New AMS holds itself out to the public as the

---

held liable for Old AMS's debts.  See id.  The court will not impose sanctions solely on the basis of New AMS's confidence and speculation.

same entity as Old AMS, boasting "Over 30 Years of Building Business with Indoor and Outdoor LED Displays!" on its website, and claiming to have been established in 1978 in an online job posting. Pl.'s Resp. New AMS's Sanctions Mem. Exs. A, E ("Pl.'s Sanctions Resp."). When investigating New AMS, counsel for Customs contacted New AMS president Dennis Thums, who insisted that New AMS had "NO common ownership" with Old AMS, id. Ex. B at 2, even though he knew that Mr. Mandler owned a portion of both. Thums Aff. 2d at Ex. 4. Customs also presents evidence showing that it offered to dismiss the action against New AMS "if [New AMS] could establish that [its] owners . . . had no connection to Old [AMS]," Pl.'s Sanctions Resp. at 6, which New AMS ultimately could not on account of Mr. Mandler's ownership interest. Id. Exs. B, C. Customs therefore acted reasonably in deciding to lodge and to pursue its claim against New AMS.

Parties cannot be expected to bend at the threat of sanctions based solely on opposing counsel's confidence in its own position. See Cooter & Gell, 496 U.S. at 399 ("Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded."). The requirement of zealous representation means that parties should at least have the discretion to pursue a claim based on complex facts and unsettled law — including the present action — even if that claim ultimately fails on the merits. Therefore, New AMS's

motion for sanctions must be denied in its entirety.

## CONCLUSION

New AMS's motion for summary judgment is granted in part.  As it has failed to demonstrate that it is entitled to judgment as a matter of law on the "mere continuation" exception to the general rule against corporate successor liability under Wisconsin law, however, New AMS's motion for summary judgment must also be denied in part.  Furthermore, New AMS's USCIT Rule 11 motion to impose sanctions is denied in its entirety because it fails to raise any viable basis on which to sanction Customs for filing and continuing to pursue this action.

**Court No. 12-00122**                                                        **Page 22**

## ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that defendant Adaptive MicroSystem LLC's motion for summary judgment is DENIED with respect to the mere continuation exception to the general rule against successor liability; and

**ORDERED** that defendant Adaptive MicroSystem LLC's motion for summary judgment is GRANTED in all other respects; and

**ORDERED** that defendant Adaptive MicroSystem LLC's motion for sanctions is DENIED in its entirety.


                                        /s/NICHOLAS TSOUCALAS
                                        **Nicholas Tsoucalas**
                                        **Senior Judge**

**Dated: April 10, 2013**
      **New York, New York**